# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| PMA INSURANCE GROUP, § | |
| Plaintiff § | |
| § | |
| v. § | CIV ACT. NO: 3:23-cv-610 |
| § | |
| POLK MECHANICAL COMPANY, LLC § | |
| and UPONOR NORTH AMERICA, § | |
| Defendants § | |

## PLAINITFF'S ORIGINAL COMPLAINT

Plaintiff, PMA Insurance Group ("Plaintiff"), by and through undersigned counsel, hereby demands judgment against Defendants, Polk Mechanical Company, LLC, and Uponor North America ("Defendants"), complaining against them as follows:

### PARTIES

1. Plaintiff is licensed by the State of Texas to issue insurance policies. Plaintiff is a Pennsylvania corporation with its principal place of business in Blue Bell, Pennsylvania. <u>It is therefore a citizen of Pennsylvania</u>.

2. Defendant Polk Mechanical Company, LLC is a domestic limited liability corporation with its principal place of business in Grand Prairie, Texas. <u>It is therefore a citizen of Texas.</u>

3. Defendant Uponor North America is a Minnesota corporation with its principal place of business in Apple Valley, Minnesota. <u>It is therefore a citizen of Minnesota.</u>

### JURISDICTION AND VENUE

4. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states and/or countries; moreover, the amount in

controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).  Venue is proper in this district based on 28 U.S.C. §1391(b) in that Defendant Polk Mechanical Company, LLC is based within this district.

## STATEMENT OF FACTS

5. At all relevant times, Plaintiff provided – via an in-force policy – (*inter alia*) insurance to Parker Products Holdings, LLC ("subrogor") in connection with its business operations headquartered at 3001 Strawn Lane in Fort Worth, Texas ("subject property").

6. Upon information and belief, Defendant Polk Mechanical Company, LLC ("Polk") was at all relevant times engaged in the business of, *inter alia*, performing plumbing, mechanical, and/or HVAC-related services, as well as supplying related materials, equipment, and fixtures.

7. Upon information and belief, Defendant Uponor North America ("Uponor") was at all relevant times engaged in the business of manufacturing, assembling, inspecting, testing, selling, distributing, installing and/or marketing, plumbing fittings (*inter alia*) such as the brass fittings and valves at issue in this action.

8. In or about 2018, subrogor contracted with Polk to install a hot water recirculating system ("system") at the subject property.  On or about April 17, 2022, a water leak occurred within the system, particularly at certain brass fittings and valves selected and installed by Polk and manufactured by Uponor.

9. The leak resulted in substantial damage to subrogor's property, as well as caused other consequential and incidental damages (including clean-up costs, repair, business-interruptions, and other associated expenses).

10. At all relevant times, the system – including its component parts – was not modified, changed, altered, or abused by subrogor or anyone else (besides Polk).

11. Pursuant to a contract with subrogors to do so, Polk selected, assembled, tested, inspected, marketed, distributed, sold, delivered, installed, and/or otherwise placed into the stream of commerce subrogor's herein-described system – including its brass fittings and valves – in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction, and/or a failure to properly maintain and/or diagnose problems within the system.

12. Likewise, Uponor selected, designed, fabricated, manufactured, assembled, tested, inspected, marketed, distributed, sold, delivered, installed, and/or otherwise placed into the stream of commerce the relevant components of subrogor's herein-described system – including its brass fittings and valves – in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.

13. As a result of the above-described leak and consequent damages, subrogor made claims on the above-described policy, which were paid by Plaintiff in an amount excess of $150,000.00.

14. Plaintiff thereby became subrogated to certain recovery rights and interests of subrogor for such insurance monies paid, including all claims asserted in this action.

## COUNT I – NEGLIGENCE v. DEFENDANTS

15. Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

16. The above-described damages were the direct and proximate result of the negligence and/or other unlawful conduct of Defendants – including negligent acts and/or

omissions as performed by and through their agents, servants, workmen, employees, servants and/or chosen subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

    (a)    failing to exercise reasonable care in the performance of duties in the selection, fabrication and/or installation of the system, and/or maintenance thereof, including but not limited to negligently …

        (1)    failing to competently select, fabricate, install and test the system in a safe and appropriate manner;

        (2)    failing to competently supervise the selection, fabrication, installation and testing of the system in a safe and appropriate manner;

        (3)    failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the selection, fabrication, installation, and testing of the system; and/or

        (4)    failing to properly monitor the work of all agents, subcontractors and/or employees (*et al.*, as above) during the selection, fabrication, installation and testing of the system to ensure compliance with applicable best practices and manufacturer instructions.

    (b)    failing to adequately instruct, supervise and/or train servants, subcontractors, employees, and agents (*et al.*) as to the proper ways to perform the tasks described in subparagraph (a)(1)-(4);

    (c)    failing to adequately warn subrogor of the dangers resulting from the failure to exercise reasonable care as described in subparagraph (a)(1)-(4);

    (d)    failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks described in subparagraph (a)(1)-(4);

    (e)    failing to perform the tasks described in subparagraph (a)(1)-(4) in conformity with prevailing industry, manufacturer, and/or governmental specifications and standards;

    (f)    failing to retain competent, qualified, and/or able agents, subcontractors, employees or servants (*et al.*) to perform the tasks described in subparagraph (a)(1)-(4); and/or

    (g)    violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, manufacturer instructions, and/or

    industry customs applicable to Defendants' undertakings at the subject property.

17. As a direct and proximate result of Defendants' above-described negligent acts or omissions, subrogor's property was damaged and additional expenses were incurred in an amount in excess of $150,000.00.

18. As a result of the above-described damages, subrogor made claims on the above-described policy, which were paid by Plaintiff in an amount excess of $150,000.00.

19. Plaintiff thereby became subrogated to certain recovery rights and interests of subrogor for such insurance monies paid, including all claims asserted in this action.

## COUNT II – STRICT LIABILITY v. UPONOR

20. Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

21. At all relevant times, Uponor was engaged in the business of designing, testing, inspecting, assembling, manufacturing, selling, distributing and/or otherwise placing into the stream of commerce brass fittings and valves, and specifically designed, tested, inspected, assembled, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the brass fittings and valves that failed and caused the herein-described water leaks.

22. Said brass fittings and valves were not modified, changed, altered or abused by subrogor prior to or during their use.

23. Uponor knew and intended that its brass fittings and valves would be used by consumers such as subrogor, and knew of the specific uses, purposes and requirements to which such brass fittings and valves would be put.

24.     Uponor designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the brass fittings and valves described above in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.

25.     Uponor designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the brass fittings and valves in a defective condition, unreasonably dangerous to subrogor and its property.  <u>A safer alternative design existed at the time that was available and economically viable, without diminishing the utility of the product, and said safer alternative design would have in reasonable probability prevented the damages in question, or greatly reduced their severity.</u>

26.     Uponor knew, or should have known, that the brass fittings and valves would, and did, reach subrogor without substantial change in the condition in which originally selected and sold.

27.     The brass fittings and valves were not materially altered in any way that would affect the dangerous conditions caused and created by Uponor.

28.     On and at all times prior to April 17, 2022, subrogor operated the system with the brass fittings and valves in the normal, ordinary and intended manner, and for its normal, ordinary and intended purpose.

29.     The aforementioned defects consisted of:

    a.   design defects;
    b.   manufacturing defects;
    c.   component defects;
    d.   use and/or installation instructions, and/or warnings defects; and/or
    e.   a failure to warn of the design, manufacturing, and/or component defects, and/or improperly provided warning and/or safe use instructions.

30. The aforementioned defects or defective conditions existed at the time the fittings and valves left Uponor's possession and/or control and were the producing cause of the incident described herein.

31. For these reasons, Uponor is strictly liable to subrogor – and ultimately to Plaintiff – under Section 402A of the Restatement (Second) of Torts, as well as applicable Texas statutory and common law.

32. As a result of the damages directly and proximately caused by the unreasonably dangerous defects in the brass fittings and valves, subrogor sustained and incurred damages as described herein in an amount in excess of $150,000.00.

## COUNT III – BREACH OF WARRANTY v. UPONOR

33. Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

34. At the time of designing, testing, inspecting, assembling, manufacturing, selling, distributing, and/or otherwise placing the brass fittings and valves into the stream of commerce, Uponor had reason to know the particular purpose for which they would be used, and knew that its skill and judgment were being relied upon to furnish suitable products.

35. Thus, Uponor breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code ("UCC") and applicable Texas law in that the brass fittings and valves were not fit for the particular purpose for which such products are required.

36. In addition, Uponor breached the implied warranty of merchantability as set out in the UCC and applicable Texas law in that the brass fittings and valves were not fit for the ordinary uses for which such products are used.

37. In addition, Uponor breached any and all express warranties made or relating to the brass fittings and valves that became part of the basis of the bargain for sale of the products in violation of the UCC and applicable Texas law.

38. Subrogor's damages occurred as a direct and proximate result of Uponor's breach of its implied warranties of fitness for a particular purpose and merchantability as set out in the UCC and applicable Texas law as a result of Uponor's breach of its expressed warranties in violation of the UCC and applicable Texas law.

39. Such breaches caused the herein-described damages to subrogor.

## COUNT IV – BREACH OF IMPLIED WARRANTIES v. POLK

40. Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

41. In furtherance of the herein-described services performed, Polk impliedly warranted that all work undertaken at the subject property would be done in a reasonably workmanlike manner, and/or with quality workmanship, so as to create a safe and properly functioning system.

42. Based upon the herein-described improper conduct by Polk (by and/or through its servants, employees, subcontractors, and/or agents (*et al.*, as above), Polk breached these warranties.

43. Subrogor performed all conditions precedent to recover based upon such warranty breaches.

44. As a direct and proximate result of these warranty breaches, subrogor suffered the herein-described damages to its property, as well as the imposition of additional expenses, in an amount in excess of $150,000.00; as described herein, Plaintiff became subrogated to recovery claims relating thereto.

## COUNT V – BREACH OF CONTRACT v. POLK

45. Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

46. Based upon the contract existing between subrogor and Polk, as Polk expressly and/or impliedly promised that the activities they undertook in connection with the installation of the system would be done in a good and workmanlike manner conducive to the creation of a safe and properly functioning system.

47. Pursuant to the above-mentioned contract, Polk was impliedly and/or expressly obligated to comply with all applicable federal, state and local laws, regulations and ordinances, as well as all industry standards, customs and practices.

48. Plaintiff is not currently in possession of a copy of the contract; however, it believes that Polk is in possession of it, or that Polk is in a superior position to obtain a copy thereof compared with Plaintiff; thus, Polk is not prejudiced by Plaintiff's inability to append a copy thereof hereto.

49. Based upon the facts and allegations stated herein, Polk breached the contract in multiple ways.

50. Subrogor performed all conditions precedent to recover based upon such breaches.

51. As a direct and proximate result of such breaches, subrogor suffered the herein-described damages to its property, as well as the imposition of additional expenses, in an amount in excess of $150,000.00; to the extent these damages were paid pursuant to subrogor's insurance policy, Plaintiff became subrogated recovery thereon.

## DAMAGES

52. As the direct and proximate result of the Defendants' negligence; strict liability; breach of contract; and/or breach of both express and implied warranties, subrogor sustained damages in excess of $150,000.00 which were paid by Plaintiff. Defendants are jointly and severally liable to Plaintiff for these damages.

## PRAYER

**WHEREFORE**, Plaintiff demands judgment in its favor and against Polk – jointly, severally, and/or in the alternative with Uponor – in an amount in excess of $150,000.00, plus interest, court costs, delay damages, and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

/s/ Laura D. Schmidt
Laura D. Schmidt
SBN: 22142300
**KELLY, SMITH & SCHMIDT, P.C.**
5700 Tennyson Pkwy. Ste. 300
Plano, TX 75024**
(972) 848-7300
(713) 861-7100
schmidt@kellysmithpc.com

*\*\*all mailed correspondence should be directed to the Houston office, KELLY, SMITH & SCHMIDT, P.C. 12621 Featherwood Dr., Ste. 150 Houston, Texas 77034*