IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PMA INSURANCE GROUP, | § |
| | § |
| PLAINTIFF, | § |
| | § |
| V. | § CASE NO. 3:23-CV-610-L (BK) |
| | § |
| POLK MECHANICAL COMPANY, LLC | § |
| AND UPONOR NORTH AMERICA, | § |
| | § |
| DEFENDANTS. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 26, *Defendant Uponor, Inc.'s Motion to Compel Arbitration or, Alternatively, to Dismiss Plaintiff's Second Amended Complaint*, Doc. 23, is before the undersigned magistrate judge for findings and a recommended disposition. As stated here, the Motion to Compel Arbitration should be **DENIED,** and the Motion to Dismiss, filed in the alternative, should be **GRANTED**.

## I. BACKGROUND

This is a subrogation action arising from a water leak in a hot water recirculating system (the "System") at the Parker Products, Inc. ("Parker") headquarters located in Fort Worth, Texas (the "Property"). In its *Second Amended Complaint*, the live pleading, Plaintiff PMA Insurance Group ("PMA") alleges the following facts, which the Court accepts as true for purposes of considering the pending motion.

In or around 2018, Parker contracted with Polk Mechanical Company LLC ("Polk") to install the System at the Property. Doc. 22 at 2. In April 2022, a water leak occurred within the

System, particularly at certain brass fittings installed by Polk and manufactured by Uponor Inc. ("Uponor"). Doc. 22 at 2. The "leak resulted in substantial damage to Parker's property, as well as caused other consequential and incidental damages besides (including clean-up costs, repair, business interruptions, and other associated expenses)." Doc. 22 at 3.

"Uponor selected, designed, fabricated, manufactured, assembled, tested, inspected, marketed, distributed, sold, delivered, installed, and/or otherwise placed into the stream of commerce the relevant components of" the System – "including its brass fittings and valves – in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction." Doc. 22 at 3.

Sometime thereafter, Parker filed a claim under an insurance policy issued by PMA for damages resulting from the leak. Doc. 22 at 3. PMA paid Parker pursuant to the policy in an amount in excess of $150,000, and PMA "thereby became subrogated to certain recovery rights and interests of subrogor [Parker] for such insurance monies paid, including all claims asserted in this action." Doc. 22 at 3.

In its *Original Complaint* and its *First Amended Complaint*, PMA asserted claims against Uponor for negligence, strict liability, breach of implied warranties, and breach of express warranty. Doc. 1, *passim*; Doc. 13, *passim*. In August 2023, Uponor filed its first motion to compel, seeking an order compelling PMA to arbitrate its claims against Uponor in accordance with an "express written warranty applicable to the Uponor products allegedly at issue in this case." Doc. 15 at 1. Rather than respond to Uponor's motion, however, PMA filed its *Second Amended Complaint*, in which it no longer asserts a claim for breach of express warranty. Doc. 22. In light of the *Second Amended Complaint*, the Court denied as moot Uponor's first motion to compel or, alternatively, to dismiss. Doc. 28.

2

Now, based on the *Second Amended Complaint*, Uponor seeks an order compelling PMA to arbitrate its claims against Uponor. Doc. 23 at 1. Alternatively, Uponor moves the Court "pursuant to Federal Rule of Civil Procedure 12(b)(6) and applicable case law" for an order dismissing all claims. Doc. 23 at 2. PMA opposes the motion. Doc. 27, *passim*.

## II. APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To overcome a Rule 12(b)(6) motion, a plaintiff's "complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Twombly*, 550 U.S. at 572. Nevertheless, a complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity, and the district court cannot "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citation and quotation omitted).

## III. ANALYSIS

### A. Uponor's Motion to Compel Arbitration

Uponor moves to compel arbitration based on the same arguments as in its initial motion to compel. Specifically, it relies on the "Warranty Claim Dispute Process" section of the online express warranty published at its website, which provides that if Uponor and a claimant cannot

3

informally resolve any dispute regarding an Uponor product, then "the parties shall submit the dispute to the American Arbitration Association for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area." Doc. 25 at 10. Uponor contends that PMA is bound by the arbitration provision because it "unequivocally invoked, and attempted to enforce, the Warranty in this action through the original Complaint's and the FAC's cause of action for breach of express warranty against Uponor." Doc. 24 at 14. Uponor also argues that PMA cannot circumvent the warranty and its arbitration provision by omitting its express warranty claims from its *Second Amended Complaint*. Doc. 24 at 16.

PMA opposes the motion to compel arbitration, contending it should not be forced to arbitrate based on language in the express warranty provision upon which Uponor relies when it is no longer alleging a breach of express warranty. Doc. 27 at 3. Further, PMA contends that neither PMA nor its subrogor [Parker] entered into any agreement or contract with Uponor, let alone an agreement to arbitrate. Doc. 27 at 4. The Court agrees.

Uponor's motion is premised on allegations that are no longer before the Court. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1033 (5th Cir. 2023) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). The *Second Amended Complaint* does not adopt or incorporate by reference the prior complaint, which is therefore nullified. *Id.* Nor does the *Second Amended Complaint* assert a claim for breach of express warranty. The arbitration language cited by Uponor appears only in its online express warranty and refers to the "Warranty Claim Dispute Process." Doc. 25

4

at 10. The arbitration language, on its face, is not controlling outside the Warranty Claim Dispute Process, which PMA has not engaged based on the allegations in the Second Amended Complaint. Uponor's arguments to the contrary lack merit.

Further, in determining whether the parties have agreed to arbitrate the dispute in question, a court must consider "(1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *PaineWebber Inc. v. Chase Manhattan* Priv. Bank (Switzerland), 260 F.3d 453, 462 (5th Cir. 2001). Uponor fails to point to any contract between Parker (PMA's subrogor) and Uponor or any allegations in the *operative* complaint reflecting that PMA subjected itself to the cited arbitration language.

For these reasons, Uponor's *Motion to Compel Arbitration* should be denied.

### B. *Uponor's Motion to Dismiss*

In the alternative to its motion to compel arbitration, Uponor moves the Court "pursuant to Federal Rule of Civil Procedure 12(b)(6) and applicable case law" to dismiss PMA's claim for breach of implied warranty as untimely; to dismiss all claims under Rule 12(b)(6) because PMA "has failed to plead any non-conclusory facts stating a valid basis for relief under any theory of recovery"; to dismiss all claims as "barred by the doctrine of res judicata due to Uponor's prior settlement of a nationwide federal class action related to brass fittings in 2015"; to dismiss PMA's tort claims for negligence and strict liability as "barred by Texas' economic loss doctrine." Doc. 23 at 2.

*1. PMA's breach of implied warranty claim is untimely and should be dismissed.*

Uponor moves the Court to dismiss PMA's claim for breach of implied warranty as untimely. Doc. 23 at 2. In response, PMA "concedes that its claim for breach of implied

5

warranty is untimely as pled." Doc. 27 at 7.  PMA asserts, however, that "based on information since gleaned from its subrogor, [it] has reason to believe that during maintenance and relatively minor repairs to the system before the 2022 loss at issue, the existing Uponor fittings were replaced with other Uponor fittings that later failed." Doc. 27 at 7.  Thus, it argues, "[a]ny such replacements occurring less than four years before [it] filed suit would not violate the statute of limitations for a breach-of-implied-warranty cause of action." Doc. 27 at 7.  On this basis, PMA requests that the Court dismiss its breach of implied warranty claim "*without prejudice* so that if facts supporting the viability of a breach-of-implied-warranty cause of action are revealed during discovery, [it] may seek leave to amend in order to revive this cause of action." Doc. 27 at 7-8 (original emphasis).  Uponor did not file a reply brief.

Because PMA concedes that its breach of implied warranty claim is untimely, Uponor's motion to dismiss the claim should be granted, and the claim should be dismissed without prejudice.

> *2. PMA's remaining claims for strict liability and negligence should be dismissed under Rule 12(b)(6) for failure to state a claim.*

Uponor moves to dismiss PMA's strict liability and negligence claims pursuant to Rule 12(b)(6), arguing that PMA's claims "are predicated on nothing more than a series of speculative, conclusory, and generic 'information and belief' allegations, none of which provide Uponor with fair notice of the factual grounds, if any, for [PMA's] purported claims." Doc. 24 at 29.  As an example, Uponor contends that the pleadings are insufficient because they fail to allege "why [PMA] believes any Uponor product is defective and unreasonably dangerous" or "how any such supposed defect has actually manifested, if at all[.]" Doc. 24 at 30.  In response, PMA maintains that it has "sufficiently pleaded factual allegations under the federal pleading

standards." Doc. 27 at 9.  The Court disagrees and finds that PMA's allegations lack sufficient factual enhancement to state plausible product liability claims.

Texas has adopted Section 402A of the Restatement (Second) of Torts providing for strict liability for the sale of dangerously defective products.  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 772 (5th Cir. 2018); *New Tex. Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 402-03 (Tex. 2008); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-89 (Tex. 1967).  A manufacturer who places into the stream of commerce a dangerous product by reason of some defect is strictly liable to one who sustains injury because of the defect.  *Darryl v. Ford Motor Co.,* 440 S.W.2d 630, 633 (Tex. 1969); *New Tex. Auto Auction Servs., L.P.*, 249 S.W.3d at 403.  "To make out a strict liability cause of action, a party must establish that: (1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user."  *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984) (citations omitted).  A product can be defective because of defective design, defective manufacture, or because adequate warnings are not provided.  *See Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 377 (Tex. 1984) (citations omitted).

PMA brings claims against Uponor (as well as Polk) for strict liability and negligence. Its allegations indicate that its strict liability claims are based on a manufacturing defect, a design defect, as well as a failure to warn (marketing defect).  Doc. 22 at 7, ¶ 29.  If the Court finds that PMA has failed to state a claim for strict liability based on manufacturing and design defects or a failure to warn, the Court need not engage in a negligence analysis of these claims.  *See Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988) ("[A]lthough a

negligence claim requires a different showing from a strict liability claim, a manufacturer logically cannot be held liable for failing to exercise ordinary care when producing a product that is not defective[.]") Thus, the Court considers whether PMA's allegations are sufficient to state a plausible strict liability claim before assessing whether the claims meet the standard for negligence.

### a. Strict Liability – Manufacturing Defect

Under Texas law, "[a] manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)); *see also BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 540 (Tex. 2011); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 n.16 (Tex. 2007) (quoting *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997)).

The Second Amended Complaint contains the following allegations pertaining to a defect related to the brass fittings and valves:

> Uponor was engaged in the business of designing, testing, inspecting, assembling, manufacturing, selling, distributing and/or otherwise placing into the stream of commerce brass fittings and valves, and specifically designed, tested, inspected, assembled, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the brass fittings and valves that failed and caused the herein-described water leaks.
>
> Uponor designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the brass fittings and valves described above in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.
>
> Uponor designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the brass fittings and valves in a defective condition, unreasonably dangerous to subrogor and its property.

Doc. 22 at 6, ¶¶ 21, 23, 24.

8

To plead a manufacturing defect, a plaintiff must allege more than the mere fact of a product-related accident. *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 741 (N.D. Tex. 2016) (holding that plaintiffs claiming a manufacturing defect because "[the product] malfunctioned" and "did not perform as intended or designed" was insufficient under Rule 12(b)(6) standards); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) (holding that plaintiff may not rely on *res ipsa loquitur* to make manufacturing defect claim); *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 767 (W.D. Tex. 2020) (holding that the plaintiff failed to plead a manufacturing defect when he contended that the entire design of the product was defective); *McAndrews v. C.R. Bard, Inc.*, No. H-14-2504, 2015 WL 2089432, at *2 (S.D. Tex. May 5, 2015) (holding that plaintiff claiming a manufacturing defect failed to state a claim because "Plaintiff's complaint does not allege any defect from specifications or planned output."); *Eckhardt v. Qualitest Pharm. Inc.*, 858 F. Supp. 2d 792, 800 (S.D. Tex. 2012) (holding that a plaintiff failed to plead a manufacturing defect where "the complaint contains no more than conclusory allegations that there was a manufacturing defect.").

As in these cases, PMA's allegations of a manufacturing defect are conclusory and speculative. Because it fails to allege more than just the mere fact that the System malfunctioned, its pleadings are insufficient under Rule 12(b)(6) standards. *Elmazouni*, 220 F. Supp. 3d at 741; *Cofresi*, 450 F. Supp. 3d at 767; *McAndrews*, 2015 WL 2089432, at *2; *Eckhart*, 858 F. Supp. 2d at 800.

Consequently, PMA has failed to plead a manufacturing defect and this claim should be dismissed.

### b. Strict Liability – Design Defect

9

The elements of a design defect claim are that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was the producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (citing Texas Civ. Prac. & Rem. Code § 82.005(a)).

PMA fails to allege how the design was defective. The only allegation is that the product "catastrophically failed due to a defect and/or malfunction." Doc. 22 at 6, ¶ 23. Even viewing the facts in the light most favorable to PMA, the Court cannot reasonably infer that the brass fittings and valves had a defect. *See* Doc. 22 at 6, ¶¶ 21, 23, 24. In addition, PMA has failed to allege any "safer alternative" design. This is a critical omission because PMA cannot recover on its design defect claim unless it can show that a safer alternative design was feasible. Tex. Civ. Prac. & Rem. Code § 82.005(a). "Translated to the early stage of the present proceedings, this means that [it] must at least plead that the alternative design existed." *Williams v. Gen. Binding Corp.*, No. 3:23-CV-00850-K, 2024 WL 628850, at *3 (N.D. Tex. Feb. 14, 2024) (citation omitted) (dismissing with prejudice a plaintiff's design defect claim where plaintiff failed to allege a safer alternative design).

For these reasons, as with the manufacturing defect allegations, PMA has failed to plead a design defect and this claim should be dismissed.

### c. *Strict Liability – Marketing Defect (Failure to Warn)*[1]

---

[1] Failure to warn and marketing defect are essentially the same in this Circuit. *See, e.g.*, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F. 3d 753, 772 (5th Cir. 2018); *Bryant v. Giacomini, S.p.A.*, 391 F. Supp. 2d 495, 503 (N.D. Tex. 2005) ("In a marketing defect ('failure-to-warn') case, the claimant must show that the warning was defective, and that the defect was the producing cause of the injury.")

"Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." *Am. Tobacco Co.,* 951 S.W.2d at 426. "A product may be unreasonably dangerous if a manufacturer fails to warn of a foreseeable risk arising from the use of the product, and the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 427 (5th Cir. 2001) (quoting *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549-50 (Tex. App.—San Antonio 2001, no writ)). "The aim of a marketing defect claim is to impose liability where the failure to warn *itself* caused a product to be unreasonably dangerous." *Cofresi*, 450 F. Supp. 3d at 767 (original emphasis) (citing *Ethicon Endo-Surgery, Inc. v. Meyer*, 249 S.W.3d 513 (Tex. App.—Fort Worth 2007, no pet.)).

The sole allegation in the *Second Amended Complaint* is that the defect consisted of "a failure to warn of the design, manufacturing, and/or component defects, and/or improperly provided warning and/or safe use instructions." Doc. 22 at 7, ¶ 29. Consequently, the Court finds that PMA's conclusory and boilerplate allegations of a marketing defect cannot survive Uponor's dismissal motion because PMA fails to identify how any warning was inadequate or insufficient.

For these reasons, PMA has failed to adequately plead a marketing defect and this claim should be dismissed.

### d. Negligence

"Normally, strict products liability and negligence are separate causes of action with different elements." *See Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 857 (Tex. App.—Dallas 2007, pet. denied) (citing cases). Here, however, PMA alleges no negligence by Uponor other than with respect to whether the component parts were unreasonably

11

dangerous. Under Texas law, where negligence claims are only based on the allegations that a product is unreasonably dangerous, "the negligence theories are subsumed by the strict liability theories asserted." *Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600, at *4 (S.D. Tex. Oct. 7, 2019) (citation omitted). Because PMA's negligence theories are based on the allegations that the product was unreasonably dangerous, its negligence theory is subsumed and encompassed in its defective product theories. Under Texas law, a plaintiff that fails to allege the elements of a strict liability claim cannot pursue a claim for negligence since a defendant cannot be negligent for manufacturing a product that was not unreasonably dangerous. *Garrett*, 850 F.2d at 257. As analyzed above, the Court finds that PMA has failed to adequately plead manufacturing, design, or marketing defects and, therefore, its negligence claim similarly fails. *See Williams*, 2024 WL 628850, at *2 (holding that where plaintiff failed to sufficiently plead that the machine was defective for purposes of the strict liability version, her negligence-based claim must be dismissed as well).

Accordingly, PMA's negligence claim should likewise.

### IV. AMENDMENT OF PLEADINGS

In its response brief, PMA does not request to amend its pleadings in the event the Court determines that it has failed to state a claim upon which relief can be granted. As previously noted, PMA has already amended its pleadings twice, once with leave of Court and once as a matter of course as permitted by Federal Rule of Civil Procedure 15(a)(1)(B), after Uponor filed its initial motion to compel arbitration and, in the alternative, motion to dismiss for failure to state a claim, making the same arguments as those currently before the Court.

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision

to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

PMA continues to maintain that its allegations of strict liability and negligence, as currently pled in the Second Amended Complaint, are sufficient to withstand a motion to dismiss under Rule 12(b)(6). *See* Doc. 27 at 9. And, as previously stated, PMA does not request an opportunity to amend its pleadings if the Court finds them to be deficient. In other words, by not requesting an opportunity to amend, PMA necessarily stands on the strength and sufficiency of its pleadings. Further, as the procedural history reflects, *see supra* Sec. I, PMA already had a preview of Uponor's arguments supporting its Rule 12(b)(6) motion to dismiss when it filed its *Second Amended Complaint*. While PLA amended its allegations to omit its claim for breach of express warranty, it did not amend its strict liability or negligence allegations in response to Uponor's contention that their pleadings were conclusory. As PMA maintains that its *Second Amended Complaint* adequately states strict liability and negligence claims upon which relief can be granted and does not request leave to amend its pleadings, the Court concludes that PMA has stated its best case and that it does not have additional facts to plead a claim upon which relief

can be granted.[2]  Under these circumstances, permitting another pleading attempt would be an inefficient use of the parties' resources and judicial resources; and given the age of this case, would cause unnecessary and undue delay; and would be futile.

Accordingly, on the record presented, granting leave for further amendment is not warranted.

### IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, *Defendant Uponor, Inc.'s Motion to Compel Arbitration or, Alternatively, to Dismiss Plaintiff's Second Amended Complaint*, Doc. 23, should be **DENIED IN PART** and **GRANTED IN PART**.  Specifically, the Motion to Compel Arbitration should be **DENIED**, the Motion to Dismiss should be **GRANTED**, PMA's strict liability and negligence claims should be **DISMISSED WITH PREJUDICE**, and its breach of implied warranty claim should be **DISMISSED WITHOUT PREJUDICE**.[3]

**SO RECOMMENDED** on May 23, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[2] The Fifth Circuit has held that "at some point a court must decide that a plaintiff has had fair opportunity to make its case; if after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller*, 342 F.3d at 567 (cleaned up) (citation omitted).

[3] Because the Court has concluded that PMA's strict liability and negligence claims should be dismissed pursuant to Rule 12(b)(6), and PMA concedes that its breach of implied warranty claim is untimely and should be dismissed, the Court need not address Uponor's remaining arguments in support of its motion to dismiss.

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).