IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **PMA INSURANCE GROUP,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:23-CV-00610-L** |
| § | |
| **POLK MECHANICAL COMPANY LLC** § | |
| **and UPONOR NORTH AMERICA,** § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Polk Mechanical Company LLC's ("Defendant" or "Polk") Motion for Summary Judgment ("Motion") (Doc. 29), filed December 21, 2023. Having considered the Motion, briefs, admissible summary judgment evidence, file, record, and applicable law, the court **grants** Defendant's Motion.

**I.    Background**

At all relevant times, Plaintiff PMA Insurance Group ("Plaintiff") provided property insurance to Parker Products Holdings, Inc. ("Parker" or "Subrogor") in connection with its business headquartered at 3001 Strawn Lane, Fort Worth, Texas (the "Property"). Polk is "in the business of … performing plumbing, mechanical, and/or HVAC-related services, as well as supplying related materials, equipment, and fixtures." Doc. 22 at 2. On or about April 25, 2017, Parker and Polk entered into a Standard Form of Agreement between Owner and Trade Contractor, Trade Contract No. 31016-14 (the "Contract") (Doc. 31 at 5) for "installation of several plumbing systems, including a hot water recirculating system…at the Property" (the "System"). Doc. 31 at 2 (McHugh Aff. ⁋ 3). The "Scope of Work" included:

**Memorandum Opinion and Order – Page 1**

**Scope of Work:**
1. ~~Verify/confirm design criteria and proposed design for compliance to applicable Codes.~~
2. Design, provide and install all trapeze hangers and pipe supports as required.
3. Prepare and submit manufacturer data cutsheets and specifications for proposed equipment and fixtures for review and approval.
4. Provide and install, double check valve and back flow preventer assembly where shown on drawings **or** as required by local codes.
5. Provide and install, back flow preventer assembly on water supply to boilers as required by local Codes.
6. Provide and install plumbing, piping, valves, and insulations, for Domestic Cold Water (DCW), Domestic Hot Water (DHW ), Recirculated Domestic Hot Water (DHWR), Process Domestic Hot Water (DHW Process), Compressed Air (CA), Process Steam and Steam Condensate Return, and Natural Gas services as shown on drawings and schedules, and specifications.
7. Provide and install plumbing fixtures, circulation pumps, domestic hot water heaters, as shown on drawings and schedules.
8. Receive, unload and install Owner furnished Kemco - process heating water boiler (~~DWH-2~~) [HWB-1], ~~including water softener, chemical treatment system, and system pumps as shown on drawings and schedules.~~ Excluded in proposal
9. Receive, unload and install Owner furnished process steam boiler (SB-2), ~~including feedwater treatment system with blowdown, feedwater pumps,~~ as shown on drawings and schedules. Excluded in proposal - not scheduled (#7)
10. Provide and install boiler stacks to extend from boiler to above roof, including exterior roof stacks and rain hoods, and supports as required by applicable Codes.
11. ~~Receive, unload and install Owner furnished two (2) industrial air compressors and refrigerated air dryers, filters, and accumulator tank, as shown on drawings and schedules.~~
12. Receive, unload and install Owner furnished process hose stations (HS-1), process hand wash sinks (S-1) and other fixtures as designated.
13. Provide and install wood blocking, pipe anchors for piping on roof; equipment stands and drip pans for heaters, as required.
14. Perform system pressure testing per manufacturer's recommendations or as required by applicable Codes.
15. Flushing and cleanout of piping and system prior to startup.
16. System Flow Testing and Balancing.
17. Provide as-built documents.
18. O&M manuals and maintenance/warranties.
19. SHOW applicable TAX amount.

Doc. 31 at 26. Relevant to this civil action, the Contract also includes a requirement that Parker "obtain and maintain property insurance upon the entire Project," and a "Waiver of Rights" which states:

> The Owner [(Parker)] and Trade Contractor [(Polk)] waive all rights against each other and the Construction Manager, the Architect/Engineer, the consultants, agents and employees of any of them and all other trade contractors for loss or damage to the extent covered by Builder's Risk or any other property, transit or tools and equipment insurance, except such rights as they may have to the proceeds of such insurance.

*Id.* at 10. Separate from the Contract, on August 7, 2019, Parker and Polk entered into a Maintenance Agreement for Environmental Systems (the "Maintenance Agreement") (Doc. 31 at 57).

On April 17, 2022, "a water leak occurred within the [S]ystem, particularly at certain brass … installed by Polk." Doc. 22 at 2. As a result of the damage caused by the leak, "[Parker] made

**Memorandum Opinion and Order – Page 2**

claims on [its insurance] policy, which were paid by Plaintiff in an amount excess of $150,000.00."

*Id.* at 3. According to Plaintiff,

> Pursuant to the Contract…, Polk selected, assembled, tested, inspected, marketed, distributed, sold, delivered, installed, and/or otherwise placed into the stream of commerce [Parker's System]—including its brass fittings and valves—in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction, and/or a failure to properly maintain and/or diagnose problems within the [S]ystem.

*Id.* at 3.

Accordingly, on March 20, 2023, Plaintiff filed this subrogation action against Defendants Polk and Uponor North America[1] ("Uponor"). Plaintiff filed its First Amended Complaint (Doc. 13) on June 28, 2023, and its Second Amended Complaint[2] (Doc. 22) on August 31, 2023. In the Second Amended Complaint, Plaintiff brings the following claims against Polk: (1) Negligence; (2) Breach of Implied Warranty; and (3) Breach of Contract. In its Answer (Doc. 13), Polk asserts several affirmative defenses, including waiver, statute of limitations, and that the "implied

---

[1] On September 14, 2023, Uponor filed a Motion to Compel Arbitration or Alternatively, Motion to Dismiss ("Motion") (Doc. 23) Plaintiff's Second Amended Complaint (Doc. 22). The Motion was referred to Magistrate Judge David Horan for a hearing if necessary, and to issue a findings and recommendation (Doc. 26). Judge Horan entered his Findings, Conclusions, and Recommendation (the "Report") (Doc. 38), recommending that the court deny Uponor's Motion for Arbitration, grant its Motion to Dismiss, and dismiss Plaintiff's Second Amended Complaint without an opportunity to replead. Contemporaneous with this Memorandum Opinion and Order, the court entered an Order accepting and adopting the Report and dismissing Plaintiff's claims against Uponor.

[2] As stated in the court's Order filed contemporaneous with this Memorandum Opinion and Order:

> Plaintiff did not seek leave to file its Second Amended Complaint, nor did it obtain written permission from Defendants to file it. Accordingly, the Second Amended Complaint violates Federal Rule of Civil Procedure 15(a). *See* Fed. R. Civ. Pro. 15(a)(1)-(2) ("A party may amend its pleading *once* as a matter of course…. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."). Defendants, however, did not object to Plaintiff filing the Second Amended Complaint, and relied on it when arguing their dispositive motions. The Magistrate Judge sanctioned Plaintiff's filing of the Second Amended Complaint by dismissing Uponor's Motion to Dismiss the First Amended Complaint (Doc. 15) and analyzing the Second Amended Complaint in her Report. Defendants also did not suffer any legal prejudice by the filing of the Second Amended complaint, as evidenced by the filings of their dispositive motions. Accordingly, the court considers the Second Amended Complaint as the live pleadings, despite Plaintiff's violation of Rule 15.

**Memorandum Opinion and Order – Page 3**

warranty cause of action is superseded and barred by the express warranty contained in article 10.11 of [the Contract]." Doc. 13 at 11-12.

## II.     Preliminary Issue

On January 31, 2024, Plaintiff filed a Sur-Reply (Doc. 35), and on February 2, 2024, Polk filed a Sur-Sur Reply (Doc. 36). Neither party sought leave of court. Accordingly, for the reasons stated below, the court sua sponte **strikes** Plaintiff's Sur-Reply and Polk's Sur-Sur-Reply.

Once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, the movant is entitled to file the last pleading. Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter. *See Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). The court has found that surreplies usually are not that helpful in resolving pending matters, and it only permits filings beyond Local Civil Rule 7.1 in exceptional or extraordinary circumstances. *Gezu v. Charter Comm'ns*, 17 F.4th 547, 556 (5th Cir. 2021) ("Because the rules do not provide for surreplies as a matter of right, the district court only accepts such filings 'in exceptional or extraordinary circumstances.'" (quoting *Lacher*, 147 F. Supp. 2d at 539)).

This district is not alone in its treatment of sur-replies. *See Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) (citing cases). To establish that exceptional or extraordinary circumstances warranting a sur-reply exist, a party seeking leave to file a sur-reply ordinarily must show that a new issue, theory, argument, or evidence was raised or relied on for the first time in the movant's reply brief or in connection with the reply brief. *Id.*; *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (holding "the district court did not abuse its discretion in denying Plaintiff's motion to file a surreply, "because [Defendant] did not

raise any new arguments in its reply brief"); *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. 3:01-CV-1397-P, 2003 WL 251318, at *18 (N.D. Tex. Feb. 3, 2003). Such circumstances arise infrequently, as the scope of a reply is limited to addressing arguments raised in the movant's initial motion and brief because it would be unfair for the movant "to sandbag and raise wholly new issues in a reply." *Weems*, 2011 WL 2731263, at *1. For similar reasons, "arguments raised for the first time in a Reply brief are [generally] waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (citation omitted).

Here, Plaintiff did not seek or obtain leave of court to file his surreply; nor does its surreply itself establish the existence of exceptional or extraordinary circumstances warranting the filing of a surreply. Plaintiff also does not establish (nor can it establish) that Defendant raised new arguments in its reply. Accordingly, the court **strikes** Plaintiff's Sur-Reply and, consequently, Defendant's Sur-Sur-Reply.

### III.  Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are

"irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Discussion

Polk argues that its affirmative defense of waiver creates a basis for summary judgment in its favor on Plaintiff's claims against it. Specifically, in its Motion, Polk argues that pursuant to the Waiver of Rights clause in the Contract, "Parker waived all rights against [it] for loss of damage to the extent covered by 'other property…insurance.' As [Plaintiff] 'steps into the shoes of its insured…' when subrogating a loss, [Plaintiff's] claims against it are contractually waived." Doc. 30 at 5. In response, Plaintiff concedes that it waived some of its claims. Plaintiff, however, argues that waiver cannot apply to the "negligence committed by Polk in its continuing maintenance of the [S]ystem" because maintaining the System was outside the Scope of Work within the Contract; therefore, the waiver provision in the Contract "cannot serve to extinguish Plaintiff's [entire] case." *Id*.

On January 25, 2024, Polk filed a Reply (Doc. 33). In its Reply, Polk argues that "Plaintiff has failed to provide any admissible evidence to support its allegation that Polk maintained the [System]." Doc. 33 at 1. Further, Polk argues that it provided summary judgment evidence that demonstrates that the "unrelated" Maintenance Agreement (Doc. 31) did not include maintenance of the System, which is further confirmed by Don McHugh's declaration (Doc. 31). McHugh Aff. ¶ 3 ("Although the Maintenance Agreement relates to the Property, it does not include the [System].").

Under Texas law, to find waiver, the following elements must be met: "(1) a right must exist at the time of the waiver; (2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and (3) the party intended to relinquish its right." *Broadcast Satellite Int'l, Inc. v. National Digital Television Ctr.,* 323 F.3d 339, 345 (5th Cir. 2003) (citing *B. Conrad Moore & Assoc., Inc. v. Lerma,* 946 S.W.2d 90, 93 (Tex. App.—El Paso 1997, writ denied)). Here, the parties agree that all claims that fall within the scope of the Contract are waived; therefore, there is no genuine dispute of material fact regarding these claims, and Polk is entitled to judgment as a matter of law. Accordingly, the court will grant summary judgment in Polk's favor on Plaintiff's claim for breach of contract, breach of implied warranty, and negligence, except for negligence in maintaining the System. Therefore, the only determination that remains is whether Polk should be granted summary judgment on Plaintiff's negligence claim limited to the maintenance of the System.

Under Texas law, "[t]he elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Club of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995) (citations omitted). Here, Polk argues that Plaintiff fails to provide any summary judgment evidence to establish that Polk provided maintenance on the System. Further, Plaintiff concedes that the Contract which forms the basis of its claims did not require Polk to perform maintenance on the System, since it was not within the Scope of Work. Finally, Defendant's summary judgment evidence demonstrates that although Parker and Polk had a Maintenance Agreement, it did not include maintenance on the System, and *Plaintiff does not contest this point*. Accordingly, the court determines that Plaintiff has failed to allege any duty or breach of a duty and that their negligence claim therefore fails as a matter of law. Accordingly,

there is no genuine dispute of material fact, and the court will grant summary judgment in favor of Polk on Plaintiff's negligence claim, in its entirety, in favor of Polk.

## V.     Conclusion

For the reasons explained, Polk has satisfied its summary judgment burden as the movant with respect to its affirmative defense of waiver and all of Plaintiff's claims.  Plaintiff, on the other hand, has failed to raise a genuine dispute of material fact in response to Defendant's summary judgment motion.  Polk is, therefore, entitled to judgment as a matter of law on all of Plaintiff's claims. The court, therefore, **grants** Polk's Motion and **dismisses with prejudice** all claims asserted by Plaintiff against it.  The court will issue a judgment by a separate document as required by Federal Rule of Civil Procedure 58. Any request for attorney's fees must be filed in accordance with Federal Rule of Civil Procedure 54(d).

**It is so ordered** this 27th day of August, 2024.

Sam A. Lindsay
United States District Judge